## Case No. 9,597.

### MILLER & PETERS MANUF'G CO. v. DU BRUL.

[2 Ban. & A. 618;[1] 12 O. G. 351; 5 Cent. Law J. 467.]

Circuit Court, S. D. Ohio. May, 1877.

PATENTS — REISSUE — PRESUMPTION AS TO COMMISSIONER — MERIT — UTILITY.

1. The presumption of law is that the commissioner of patents has done his duty in granting a reissue thoroughly, faithfully and properly, and the question is not open for re-examination, except on the ground of fraud.

2. If there be any merit or utility in an invention, it entitles the inventor to a patent, although such merit or utility be slight, and the grant by the patent office is prima facie evidence of such merit or utility.

[Cited in Strobridge v. Lindsay, 2 Fed. 695.]

3. Reissued letters patent No. 6,662, granted to F. C. Miller, September 28th, 1875, for improvement in cigar molds, *held* valid.

[2][This suit was brought [by the Miller & Peters Manufacturing Company against Napoleon Du Brul] upon reissued letters patent [No. 6,662] granted Frederick C. Miller, September 28, 1875, as a reissue of letters patent [No. 155,806] granted the same October 13, 1874, for improvement in cigar molds. The alleged invention related to cigar molds, which consists of an upper and lower half; the lower half being provided with sockets and the other half with corresponding matrices attached to rigid backing and intended to fit into the sockets of the lower half. The original patent contained one claim only, which was for a certain plug of wood placed in the socket of the lower half, and designed to prevent the splitting of them in that socket. This plug of wood in the lower socket was the only improvement referred to in the statement of the invention in the original specifications as being the inventions of the patentee. The description of the molds in which this plug was used, taken in connection with the drawings and model, showed a certain flange upon the basis of the matrices of the upper half of the mold. These flanges, however, were provided for an entirely different purpose from that designed to be answered by the plugs in the lower half of the plug, and sustained no relation to such plugs. The patent was reissued with the two claims recited in the opinion, the subject matter of which was these two flanges. It appeared in evidence that cigar molds known as the "Old German mold," had been in common use in this country many years prior to the alleged invention. These molds were constructed of wood, the same materials used by complainant, with small sockets used in the lower half of the mold, and separate matrix or matrices in sections of one each, attached to rigid backing by glue or nails, or both, forming the upper half-mold. They differ from the complainant's, so far as the point here in controversy is concerned only in backing the flanges at the base of the matrices of the upper-half mold. It was claimed by the complainant that these flanges somewhat facilitated the construction of the mold. Registration was secured in the old German mold by the laying the cups of the upper half-mold in the sockets of the lower, then applying glue to the back of the cups, afterwards placing the rigid backing board upon them. The cups would adhere to this backing, and being withdrawn in their proper position, could then be nailed or riveted firmly to the backing board. Complainant claimed that by the use of this flange the matrix was retained in position in the lower socket while receiving the glue, and until the glue was dried, thus securing more perfect registration and cheapening the cost of the mold. Among the patents set up as anticipation aside from the "Old German mold," were patents granted the defendant himself, May 16th, 1871, and May 9th, 1871, and the patent granted Maguire May 6th, 1873, all for improvement in cigar molds.

[It was also shown in the evidence that the defendant had, as early as 1870 and 1871, manufactured and sold cigar molds, having the matrices made in sections of four each with the flange at their base like the flange claimed by the complainant, and used with the corresponding lower-half. The patent to defendant of May 16th, 1861, showed the mold with the matrices made in sections of four or five each, also provided with these flanges. The several sections were shown in this patent connected by rabbit joints between the matrices. The patent described in the mold was made preferably of iron or sheet metal, but stated that any material might be used. Wood was shown to be the material common in use for that purpose for that time. It also stated that the matrices might be made in sections of one or more each. That patent to Maguire showed similar matrices attached to a similar backing by glue, and with flanges extending from matrix to matrix, but made in a single section, that is the matrices of the entire molding connected by their flanges without division between the flanges. The defendant denies the validity of the issue, and the novelty and the patentability of the alleged invention. He admitted that he had made cigar molds with flanges in some respects resembling those shown in the reissued patent, but claimed that he did so under and in accordance with the patents granted to himself in 1871, and subsequently he denied that he used any other feature of the alleged invention. It was also specially insisted upon by the defendant at the hearing, that as complainant's alleged invention consisted, at most, only in adding the flanges to the bases of the cups, or matrices, which were otherwise used precisely as in the old German mold, and as he had described and shown and used such flanges

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

[2] [From 5 Cent. Law. J. 467.]

upon the bases of matrices, when made in sections of four each, as early as 1871, and had in his patent also stated that they might be made in sections of one each, which would make the same as the complainant's, he had a right to proceed under his patent of 1871, to make the molds there shown with the matrices divided into sections of one each. It was also insisted that as the claims were not limited to the cups when made in sections of one each, the defendant's patent of 1871 and the molds made by him at that time, even if used without the suggestion as to dividing them into sections of one each, each mold would be a complete anticipation; also, that the Maguire mold would be a complete anticipation of the claims, and that if the claims were limited to the mold when the matrices were in sections of one each, it requires no invention to divide up the Maguire into sections of one each, precisely as the "old German mold" has been divided. It was also insisted that, as the only merit claimed for the flanges was in the process of construction, and not in the completed mold, where it performed no functions other than was performed by the backing of the old German mold, the patent should have been for the machine as completed; that the claim was not capable of that construction, and that, if so construed, there was no evidence that the defendant used the process of construction in which the complainant claimed to get some advantage from the flange. It also appeared in evidence that the defendant's patent of 1871 had been reissued with claims for those flanges.] [2]

Wood & Boyd, for complainant.
Hatch & Parkinson, for defendant.

SWAYNE, Circuit Justice. This is a suit brought on reissued letters patent for improvement in cigar-molds, granted F. C. Miller, September 28th, 1875, as a reissue of letters patent originally granted same, October 13th, 1874. The bill charges the infringement of the first and second claims, which are as follows: "1. The series of cups, e, which are constructed with flanges e' and attached to a suitable backing, substantially as and for the purposes specified. 2. The movable half-mold, composed of a series of cups, e, which are constructed with the flanges e' and attached to a backing, in combination with the stationary half-mold, having a corresponding series of sockets, d', substantially as and for the purpose specified."

The defences relied on are: 1. That the reissue is broader than the original, and not for the same invention. 2. Want of novelty. 3. Want of patentable invention. As to the validity of the reissue, it is delegated, by the act of congress upon the subject, to the commissioner of patents, carefully to examine the question whether the patentee is entitled to a reissue, and to decide according

to the result of that examination. The presumption of law is, according to the authorities, that the commissioner has done his duty thoroughly, faithfully, and properly, and has arrived at a conclusion in accordance with his action. The question is not open for re-examination, except on the ground of fraud. Battin v. Taggert, 17 How. [58 U. S.] 84; Rubber Co. v. Goodyear, 9 Wall. [76 U. S.] 796; Seymour v. Osborne, 11 Wall. [78 U. S.] 516, and other cases. The presumption is, that everything is correct and valid touching the reissue. I have found nothing in this case sufficient to open up the question for re-examination. I need not remark further on the subject.

On looking through the patents which have been introduced on the part of the defendant, and examining the models which show the invention, we find nothing that exactly anticipates said invention. In this connection it is proper to read a part of the specification: "The plungers or cups of the upper or movable half-mold are formed separately, and subsequently secured to the backing, while in the sockets in the lower or stationary half-mold, in order to obtain a perfect register between the cups and the sockets, heretofore the cups have been made of the same width, or nearly so, from top to bottom—that is to say, the width at the top at a particular point would be the same, or nearly so, as the width at the bottom at this same point, and the face of the backing to which they are attached, checked their further entrance into the sockets, by bringing up against the top of the socket-board By reason of this construction of the cups, it was exceedingly difficult to secure the backing to it without injuring the cups or the surfaces of the sockets by forcing the cups too far into the socket, and, in case the cups were secured by gluing, either their backing would glue onto the top of the socket-board, or else it had to be withdrawn before the cups had been previously secured. To avoid these difficulties is the object of the first part of my invention, which consists in providing the plungers or cups with laterally projecting flanges, by means of which they are supported on the top of the socket-piece while in the sockets, so that the backing may be brought down upon them with any requisite force to secure them without danger of injuring the molds proper, and which also serve to form a space between their backing and the socket-board, so that, in gluing, the backing may be held clamped to the cups for any length of time necessary to make a permanent and reliable connection."

Then, after referring to another feature not here in controversy, the patentee proceeds in describing this invention: "The cups e are made singly and separate from the backboard a, for the reason that it is very difficult and very expensive to make them of one piece, and at the same time

make the whole set or series fit accurately to the corresponding female sockets underneath, while, by making them singly, I make them cheaply, and then, by laying them one by one into the female sockets d', and while in such position, gluing or otherwise uniting the backboard a to them, I secure a fitting and correspondence of the two sets of sockets or cups that is absolutely unattainable in any other manner. Not only this, but if one of the cups e be accidentally broken, I can at once and in an inexpensive manner, replace; while if the cups were in one piece, and then one of the cups were to be broken, the whole series would become practically worthless. In furtherance of this object, I make each cup e with flanges or shoulders e', which gives each cup the broadest possible base to stand on, yet leaves space between the cups for the attainment of the nice adjustment, with reference to the socket d', which I have spoken of. The grain of the wood of these cups runs, by preference, in the direction of their length, and transversely of the length of backboard a. When the shoulders e' fit down upon the socketboard d, as shown in Fig. 2, the spaces between the faces of the sockets d' and cups e are circular in cross-section, and fitted to give the proper cylindrical shape to the cigars. Further, the flanges e' e' on the cups enable me to make the molds properly rounded in cross-section, without altering the depth of either the male or female cups, by simply making the male cups with thinner or thicker edges, as the case may require."

In the flanges attached to each upper cup, at the bottom of the upper cup, required to be separate and distinct from the others, and the flanges required to be distinct from the backing-board, and attached to it in the manner described, I find what I do not in any other case. There is no description in any patent of exactly the same thing. There is to be found in no mold which has been produced by the defendant, exactly the same thing. In several instances, there has been a very near approach to the alleged invention of the plaintiff, but in no instance has the mark been quite hit. It is neither claimed nor proved that any mold was ever made or used exactly as described in the complainant's patent. The variations in several instances are exceedingly small, but they are sufficiently marked to leave a distinction between them and the requirements and description of the complainant's invention, as set forth in his patent.

The case turns entirely on the complainant's flanges. For the reasons which I give, I have come to the conclusion that his invention belongs to him, as inventor, and that it has the requisite novelty. So far, I think, his case stands on firm ground. Then comes up the question of patentability. I have no hesitation in saying that upon the argument it seemed to me that there was no sufficient novelty and merit. Single cups, attached to a backing, having been invented before, it seemed to me, that the point beyond this prior invention, which the complainant has reached, was not sufficient to sustain a patent. In this aspect of the case I thought there was no novelty. It is proved, that small as these flanges are, inconsequent as they seem, little bearing as they have upon the question, there is some merit, some utility. If that be so, that, united with the novelty which has been found to exist, and which is established in the proof, small as that merit is, it entitled the complainant to a patent, in the judgment of the commissioner of patents, in the judgment of the patent office, and it entitles him to the judgment of this court upon that point. If this be so, the patent seems to be supported, and the complainant is entitled to the benefit. We have no authority to measure the degree of merit in the case in this connection. The action of the patent office is prima facie proof to that effect. The testimony in the record bears upon the proof and sustains the judgment of the patent office, if this were material. The testimony of Miller is full to this effect. and, in my judgment, it has not been effectively contradicted. The testimony of Peters, of the complainant corporation, is less cogent, but substantially to the same effect. The testimony of Tietig and of Heintz bears somewhat in the same direction, but with less force.

Now, this general reflection strikes me as very material to the solution of any doubts upon the subject, and the idea has had great weight with me in coming to the conclusion which I have reached, and with very considerable hesitation, for the time, of the correctness of my judgment. There can be no doubt that, in the distinct conception of the patent, complainant has done what was not done before. One or two persons have suggested that the proper cups can be made single and separate from the others, or connected with them—the cups being made in sections consisting of one, two or more, and the last patent of Du Brul contains, perhaps what may be called the flange, but that flange is inside. I examined the model, and came to that conclusion. Here the flange regulates the depths, and that is set out in the patent. This flange attached, when properly connected, regulates the depth to which it can be pressed, and that makes the peculiar mold in which lies the merit of the alleged invention.

But, departing from the details, it may be assumed, I think, from the proof, that nobody had found or described, or insisted on Miller's particular configuration of these molds. Why should not others let his alleged invention alone? They can use anything that preceded it—the old German mold; any of those covered by the Du Brul patents. They can use anything in relation to which evidence has been given, and which anticipated the alleged invention of the complainant. Now, if his

was so worthless or wanting in originality, so immaterial, as it is claimed, why should not they let it alone?

The conclusion I have here reached in sustaining the patent only requires that this should be done. It does not interfere with the use of any of these inventions, which really seem to be better than his, and all which antedate his. His invention, such as it is, worth much or little, belongs to him, and, under the patent, he is entitled to the exclusive manufacture of it. I am, therefore, constrained to come to the conclusion that the plaintiff is entitled to the injunction.